UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Esmerelda Carrion

v. Civil No. 13-cv-049-JL
Opinion No. 2014 DNH 174

Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration

**SUMMARY ORDER**

Esmerelda Carrion has appealed the Social Security Administration's denial of her applications for a period of disability, disability insurance benefits, and Supplemental Security Income, which claimed an onset date of February 2010. An administrative law judge at the SSA ("ALJ") ruled that, despite Carrion's severe impairments (including, inter alia, post-traumatic stress disorder, borderline intellectual functioning, personality disorder, a back condition, and complications from a wrist injury), she retains the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy, and, as a result, is not disabled. See 20 C.F.R. §§ 404.1505(a), 416.905(a).

The Appeals Council later denied Carrion's request for review of the ALJ's decision, see id. §§ 404.968(a), 416.1479, so the ALJ's decision became the SSA's final decision on Carrion's application, see id. §§ 404.981, 416.1481. She appealed the

decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Carrion has filed a motion to reverse the decision. See L.R. 9.1(b)(1). She argues that the ALJ erred by (1) finding that she did not suffer from a listed impairment, specifically, mental retardation, see 20 C.F.R. § 404, subp. P, app. 1, pt. A, ¶ 12.05, making an analysis of her RFC unnecessary, id. §§ 404.1520(d), 416.920(d), (2) giving little weight to the opinions of Carrion's treating psychiatrist, and (3) finding that Carrion's allegations of disabling symptoms were not fully credible. The Commissioner of the SSA has cross-moved for an order affirming the ALJ's decision, see L.R. 9.1(d), arguing that substantial evidence supports the ALJ's findings. For the reasons explained below, this court rules that the challenged findings were, in fact, supported by substantial evidence, and therefore denies Carrion's motion to reverse the ALJ's decision (and grants the Commissioner's).

**Mental retardation.** "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). The listing for "mental retardation" requires, in relevant part, "[a] valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. § 404, subp. P, app. 1, pt. A, ¶ 12.05(c). In

finding that Carrion's intellectual disability did not meet this standard, the ALJ noted that "there is no evidence of a qualifying IQ score in the record."

Carrion argues that this finding was erroneous because, in October 2011, she received an IQ score of 76--but on a test with a standard error of measurement such that, according to the psychologist who administered the test, Carrion's IQ "scores would likely fall between 70 and 82 95% of the time." Carrion does not explain how this translates into what the listing requires, i.e., "[a] valid verbal, performance, or full scale IQ of 60 through 70." In any event, as the Commissioner points out, a number of courts have rejected the notion that, in determining whether a claimant's IQ meets the mental retardation listing, an ALJ must account for the margin of error in the IQ test results. See, e.g., Burns v. Barnhart, 312 F.3d 113, 124-26 (3d Cir. 2002) (citing additional cases and abrogating district court cases to the contrary). As the Third Circuit reasoned in Burns, requiring the listing to be applied in this way "would essentially alter the regulatory language to say 'IQ of 60 through 75,' rather than IQ of 60 through 70.'" Id. at 125.

In the absence of any contrary authority from either the Court of Appeals for the First Circuit or this court--or any developed argument by Carrion--this court finds the reasoning of

Burns and like decisions persuasive. The ALJ properly found that Carrion did not meet the listing for mental retardation, which requires an IQ of 70 or lower, based on a documented IQ score of 76--even if that score resulted from a test with a margin of error which, if applied in her favor, produces an IQ within the necessary range.

**Treating physician's opinion.** On November 9, 2011, Carrion's treating psychiatrist, Dr. Quentin Turnbull, M.D., completed a "mental impairment questionnaire" on a form provided by Carrion's attorney. Turnbull's responses, entered by circling pre-printed responses on the questionnaire, indicated, in relevant part, that Carrion suffered from: marked limitations in concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner; twice-monthly episodes of deterioration in work-like settings; and mild inability to function independently outside of the home due to panic attacks. The ALJ gave these opinions little weight, explaining that they "are inconsistent with [Turnbull's] own treatment notes, which indicated that [Carrion's] mood and thought process and orientation were either unremarkable or within normal limits just prior to [Turnbull's] issuing this opinion." The ALJ further observed that Carrion's "activities of daily living [were] also highly inconsistent with Dr. Turnbull's opinion."

Instead, the ALJ gave "considerable weight" to the opinions of Dr. Jessica Stera, a psychologist who evaluated Carrion on referral from a social worker from the same office as Turnbull. Stera found that Carrion had "some difficulty" or "some trouble" in social functioning, understanding and remembering instructions, sustaining attention, reacting to stress, and adapting to work or work-like situations, but did not identify episodes of decompensation or any other disabling limitations. Based on Stera's findings, the ALJ found that Carrion retained the RFC for medium work, limited, in relevant part, to "simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements," "tasks involving only simple work related decisions and simple workplace changes," outside of "an intense team environment" or "a retail or fast-paced environment, or where she would deal with individuals she did not see on a regular basis."[1]

Carrion argues that "[a]lthough the ALJ gave reasons for rejecting Dr. Turnbull's opinion, he did not give reasons in accordance with the proper standard." The "proper standard," as Carrion acknowledges, requires an ALJ to give controlling weight

[1]Carrion does not question that Stera's opinions, if properly credited, fully support the ALJ's RFC finding. She merely states--incorrectly--that the ALJ "never discussed [Stera's] diagnoses or the impact on [Carrion's] functioning." The ALJ spent an entire paragraph summarizing Stera's opinions.

to the opinions of a treating physician only "[i]f [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and the severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [her] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).[2]

The ALJ's ruling that Turnbull's opinion was entitled to little weight because it was unsupported by both his own treatment notes and the evidence of Carrion's activities of daily living comports with this standard. See, e.g., Chapin v. Astrue, 2012 DNH 177, 4-6. It also comports with the regulations that require the ALJ to evaluate any medical opinion according to, among other factors, the evidence that the source provides to support the opinion and its consistency with the balance of the record. 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4).

Carrion does not point to anything in Turnbull's treatment notes that, even in her view, supports his opinions as to her

---

[2]After referencing one of these regulations, Carrion states that "[t]here was no discussion of these factors as applied to Dr. Lieberman who had treated [her] for over a year." This statement is otherwise unexplained, and "Dr. Lieberman" is not even mentioned in the balance of Carrion's motion to reverse or anywhere in the joint statement of material facts. The court has therefore ignored this "argument." See, e.g., Gaudette ex rel. D.P. v. Colvin, 2014 DNH 022, 6 (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).

psychological limitations.[3] Indeed, her sole criticism of the ALJ's conclusion that Turnbull's opinion was inconsistent with his treatment notes is that, in explaining that conclusion, the ALJ referred to notes entered not by Turnbull--but by a social worker, Pamela Hoskins, who is from the same office as Turnbull and saw Carrion during the same period that he treated her.

But this minor error does little if anything to undermine the ALJ's conclusion that Turnbull's treatment notes do not support his opinions as to Carrion's disabling limitations. Again, Carrion has not identified any such support in Turnbull's notes. The account of Carrion's treatment with Turnbull set forth in the parties' joint statement of material facts--which, by rule, must "describe all facts pertinent to the resolution of the case," L.R. 9.3(d)--says simply that he "monitored [her] medication progress," "recommended [she] undergo neuropsychological cognitive testing," "prescribed monthly medical monitoring and individual therapy," and that his

[3]Carrion's motion refers to a visit to Dr. Turnbull on November 15, 2011 (i.e., after he completed the mental health questionnaire), where, according to her motion, she reported "an episode that [had] occurred 3 weeks earlier when she stated 'Felt like she had left herself.'" It is unclear how the information Turnbull received as to this single episode could have supported his opinions, expressed two days earlier, as to Carrion's psychological limitations, and Carrion does not try to explain. Moreover, as noted infra, the joint statement of facts does not include Turnbull's observations from any of his notes, including those of November 15, 2011.

"assessment of [Carrion's] overall condition was that she remained the same, or had improved" (citations omitted).

This state of affairs provides a ready response to Carrion's complaint in her motion to reverse that the ALJ "does not once quote from Dr. Turnbull's own treatment notes": neither does Carrion. It stands to reason that those notes do not in fact provide any support for Turnbull's opinions but, regardless, the court is disinclined to wade through medical records (rendered in handwriting that--as Carrion acknowledges--is difficult if not impossible to decipher) which Carrion herself has not seen fit to meaningfully summarize in the joint statement of facts.[4]

Furthermore, Carrion does not claim that Hoskins's notes (to which the ALJ mistakenly referred as Turnbull's) provide any support for Turnbull's opinions either. As the ALJ found--and the joint statement of facts expressly states--Hoskins's progress

---

[4]The joint statement of facts indicates that "[o]n April 25, 2010, [Carrion] was assigned a Global Assessment Functioning score of 45," which "indicates serious symptoms or any serious impairment in social, occupational, or school functioning" (parentheticals, capitalization, and quotation marks omitted). While, in her motion to reverse, Carrion states that this score (which, without referring to the record, she attributes to an assessment by Turnbull and Hoskins) "would indicate that she has serious limitations in the ability to function," she does not further specify, whether by contrasting the test results with the ALJ's RFC determination or otherwise. In any event, as this court has noted, "there is no 'statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.'" Chapin, 2012 DNH 177, 14 (quoting Kornecky v. Comm'r of SSA, 167 Fed. App'x 496, 511 (6th Cir. 2006)).

notes do indeed "reveal that [Carrion's] mood/affect, thought process/orientation, and behavior/functioning were within normal limits."[5] The ALJ supportably gave little weight to Turnbull's opinions that Carrion nevertheless faced marked limitations in concentration, persistence or pace, as well as episodes of deterioration and an inability to function outside of her home. See, e.g., Comeau v. Colvin, 2013 DNH 145, 16, aff'd, No. 13-2542 (1st Cir. June 25, 2014); Chapin, 2012 DNH 177, 4-6 & n.2.

**Credibility of alleged symptoms.** Finally, Carrion argues that the ALJ failed to sufficiently explain his finding that, while her medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements as to the intensity, persistence, and limited effects of those symptoms were not fully credible. The court disagrees.

According to the joint statement of facts, Carrion testified that "she experienced depression and anxiety" and "had poor concentration," and "reported back problems" and "shoulder pain." The court assumes (since Carrion's motion does not specify) that

[5]This characterization from the joint statement of facts refers to treatment notes of sessions between April and July 2010. So there is no merit to Carrion's suggestion that the ALJ improperly restricted his inquiry in finding that treatment notes from "just prior to" when Turnbull completed his evaluation in October 2011 were inconsistent with it--the earlier treatment notes, from the spring and summer of 2010, are likewise inconsistent with it, and Carrion does not argue to the contrary.

these are the allegations she believes the ALJ should have found fully credible.

In explaining why he did not, however, the ALJ noted that Carrion "was consistently described as exhibiting normal speech, thought process, motor sensorium and behavior" as well as "normal insight and judgment on many occasions." Carrion faults this finding because, as the record support for it, the ALJ referred to one page of an assessment form completed when Carrion began treating with Turnbull and Hoskins, in April 2010. But--as already discussed at length--the treatment notes that followed the initial assessment indeed show, as Carrion has stipulated, "that [her] mood/affect, thought process/orientation, and behavior/functioning were within normal limits." And the ALJ specifically referred to some of these treatment notes in explaining why he did not fully credit Carrion's "alleged disabling mental health symptoms." It is unclear what else Carrion believes was required, by way of explanation, but, in the court's view, the ALJ's explanation was more than adequate. See, e.g., Scanlon v. Astrue, 2013 DNH 088, 14-15.

The same is true of the ALJ's treatment of Carrion's claimed physicial limitations, as to which the ALJ found "the objective evidence is completely lacking." While Carrion's motion to reverse refers to her treatment for "pain throughout her body and

in particular her lower extremities, including bilateral knee pain and groin pain" by a Dr. Geoffrey Lund, she does not explain how that supports her testimony as to "back problems" and "shoulder pain," nor does she point to anything else in the record that does.[6] Nor, conversely, did Carrion testify to pain in her legs. In addition, Carrion's counsel conceded at the hearing that, in Carrion's back, she "has pain, but I don't think there's supportive evidence in the file . . . that it would prevent her from working . . . . [I]t's minimal, if at all."

The ALJ also found that Carrion's "activities of daily living support the mental and physical ability to perform at least simple medium exertion work." This finding is supportable if not inevitable. As the joint statement of facts indicates, Carrion testified that "she was currently working 25 hours per week at a hotel . . . five days a week, five hours per day."[7]

---

[6]Carrion's motion to reverse states that she "suffers from headaches and was seen . . . on April 7, 2010 after complaining of intense pain in her head for over 2 days," asserting that the ALJ "never mentioned [her] headaches." But Carrion herself likewise "never mentioned her headaches" in her testimony before the ALJ, and the only reference to this symptom in the joint statement of facts indicates that, while Carrion sought medical care for headaches on April 5, 2010, a CT scan and physical examination produced normal results. Because this evidence so obviously provides no support for Carrion's disability claim, the ALJ cannot be faulted for failing to mention it in his decision. See Gaudette, 2014 DNH 022, 12-13.

[7]In fact, Carrion testified that she no longer worked at the hotel, where she was a maid and a server in the dining room,

She also testified (again, per the joint statement) that "she made lunch and dinner, sometimes helped her children with homework, performed household chores, and watched television." Carrion also, as the ALJ noted, "attend[ed] classes regularly while also working and raising her [two] children" during the time she claimed to be disabled.

While Carrion points out, correctly, that a claimant's ability to work part-time cannot itself support a ruling that she is not disabled (which requires the ability to work 40 hours a week or the equivalent), see, e.g., Huse v. Colvin, No. 13-117, 2014 WL 1125361, at *2 (D.N.H. Mar. 20, 2014), the ALJ did not rely solely on the fact that Carrion was working part-time (or, for that matter, that she was also caring for her children, maintaining her home, and attending classes) in finding that she was capable of medium work with certain limitations. Instead, he relied on her part-time work, and her other activities, to find that her allegations of disabling symptoms were less than fully credible, which is entirely proper. See, e.g., Comeau, 2013 DNH 145, 23-24. And the ALJ's ultimate determination of Carrion's

---

because "that would hurt my back and my neck and I was not feeling well." So--as should be clear by now--insufficient care was put into preparing the joint statement of facts. Regardless, as the ALJ noted, Carrion also testified that, at the time of the hearing, she was working 25 hours a week at a different job, monitoring children on a school bus.

RFC was, again, based on the opinions of a psychologist who had examined her. See note 1 and accompanying text, supra. The ALJ adequately and defensibly explained his reasons for not fully crediting Carrion's complaints of disabling symptoms.

Based on the foregoing, Carrion's motion to reverse the ALJ's decision (document no. 11) is DENIED, and the Commissioner's motion to affirm that decision (document no. 14) is GRANTED. See 42 U.S.C. § 405(g). The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated: August 20, 2014

cc: Judith E. Gola, Esq.
Robert J. Rabuck, AUSA